## MARTIN v. NEW YORK LIFE INS. CO.

## SAME v. EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES.

### Nos. 6747, 6748.

Circuit Court of Appeals, Seventh Circuit.
April 4, 1939.

Rehearing Denied June 6, 1939.

Arthur Chittick and John A. Niemeyer, both of Chicago, Ill., for appellant.

Homer H. Cooper, Wendell J. Brown, and Samuel O. Givens, Jr., all of Chicago, Ill., and Louis H. Cooke, of New York City, for appellee New York Life Ins. Co.

Frederic Burnham, Miles G. Seeley, and Frank D. Mayer, all of Chicago, Ill., for appellee Equitable Life Assur. Soc.

Before SPARKS, TREANOR, and KERNER, Circuit Judges.

TREANOR, Circuit Judge.

This is a consolidated appeal from judgments of the District Court in two suits which were instituted by the trustee of the estate of Saverio Ariani, bankrupt. The purpose of the suits was to obtain as assets of the bankrupt estate the cash surrender values of certain outstanding life insurance policies, or, in the alternative, the cancellation of the policies and the issuance of duplicates to be delivered to the trustee to enable the trustee to surrender them and obtain the surrender values. The District Court found for defendants and dismissed plaintiff's suits for want of equity. From these decrees plaintiff has appealed. The cases were consolidated for trial and the evidence is essentially the same in each and the facts are not in dispute.

Prior to September 8, 1931, the bankrupt was president of a Chicago bank. On September 9 this bank was closed and on September 14 and October 6, 1931, indictments were returned by the Grand Jury of the Criminal Court of Cook County charging the bankrupt with embezzlement of funds of the closed bank. The bankrupt disappeared and has remained continuously a fugitive from justice, and his past and present whereabouts are unknown to the parties of this suit.

On October 3, 1931, an involuntary petition in bankruptcy was filed in the District Court of the United States and after service by publication Ariani was adjudicated a bankrupt on December 3, 1931. On January 4, 1932, plaintiff was appointed trustee of the estate in bankruptcy and in such capacity prosecutes these suits.

All the policies which are involved in the suits contain provisions for optional benefits upon the condition, among others, that the policies be surrendered. The policies were in full force and effect on October 3, 1931, and as of that date there would have been available cash surrender or loan values, subject to the policy conditions. The premiums on the policy in cause No. 6748 were paid for a period up to, but not including a premium due on, May 9, 1933. This premium was not paid nor were any premiums paid or moneys received by the insurer for premiums thereafter. A demand for the payment of the surrender value of the policy was made upon the insurer in a letter dated June 8, 1933, the letter disclosing that the demandant, counsel for trustee, was not in possession of the policy and that he suspected that Mrs. Ariani, the beneficiary, was in possession thereof.

Under the optional provisions of the policy the cash surrender value is payable upon surrender of the policy within three months after default of payment of premiums; and in case of failure to surrender the policy the insurance becomes extended insurance for the face of the policy for such term as is indicated in the policy.

The six policies involved in cause No. 6747 became in default for non-payment of premiums at various dates from May 5, 1933, to April 9, 1934. Upon default in payment of the premiums and in case of failure of insured to surrender the policies for cash or for paid up insurance the policies became policies of extended insurance.

The position of the defendant insurance companies is set out in the court's finding of facts and is as follows:

"* * * the policies did not have any available cash surrender value as of October 3, 1931, the date of the petition in bankruptcy, for the reason that no potential surrender value is payable except at the end of an insurance year or within three months after any default in payment of the premiums and is further conditioned upon surrender of the policies. October 3, 1931, was not the end of an insurance year under any of the policies and none of them were in default for want of payment of premium on October 3, 1931. Also, the policies had not, of course, been surrendered. * * *

"As a part of this statement the defendant insurance company wishes it clearly understood that none of the policies were surrendered by the insured, the beneficiary, or the trustee for the insured on the dates mentioned and have not yet been surrendered by anyone. Therefore, the company takes the position that under the contracts which represent its only dealings with insured, that it had no obligation to the insured and, therefore, no obligation to the insured's trustee to pay a cash surrender value and that, in fact, under the terms of each of the policies no cash surrender values existed until such condition was performed."

The question, briefly stated, is whether under the facts in these equity suits in which neither the beneficiary nor the insured is a party, the plaintiff as trustee in bankruptcy may recover surrender values under the policies under Section 70a (5) of the Bankruptcy Act, 11 U.S.C.A. § 110 (a) (5) without the surrender of the policies, although such surrender is a condition precedent under the terms of the policies.

There is no question as to the rules of law applicable under Section 70a (5). A trustee in bankruptcy cannot acquire a greater right or interest in the bankrupt's property than that which belonged to the bankrupt. The cases involving property interests of a bankrupt in life insurance contracts hold that the trustee is entitled to receive only such sums as were available to the bankrupt under the policies at the time of bankruptcy and only upon performance of the conditions imposed upon the insured.[1]

The contractual right of the insurer to receive surrender of the policies as a condition precedent to the paying of cash values of policies is not a mere formal requirement, but affords substantial protection of the insurer's interests. No doubt circumstances in a particular case might be such that the interest of the insurer could not be jeopardized by failure to receive surrender of a policy; and if the party entitled to the surrender value could not deliver the policy, a court of equity would not permit him to suffer the loss of his property because of inability to per-

[1] York Manufacturing Co. v. Cassell, 201 U.S. 344, 26 S.Ct. 481, 50 L.Ed. 782; Zartman v. First National Bank, 216 U.S. 134, 30 S.Ct. 368, 54 L.Ed. 418; Sexton v. Kessler & Co., 225 U.S. 90, 32 S.Ct. 657, 56 L.Ed. 995; Frederick v. Fidelity Ins. Co. of Philadelphia, 256 U.S. 395, 41 S.Ct. 503, 65 L.Ed. 1009.

form an act, the non-performance of which could not harm the insurer. If in the instant case the insured were a party to the suit and if a showing could be made that the policies had been destroyed or for other sufficient reasons could not be surrendered, and that the insurer's interest would not be jeopardized by the payment of the cash value of the policies as of the date of bankruptcy, no doubt the plaintiff trustee would be entitled to a judgment for the cash value without surrender of the policies, or, in the alternative, to a decree requiring issuance of new policies to be surrendered in accordance with the terms thereof. But the facts are that the insured disappeared sometime before the date of bankruptcy and his whereabouts at all times since his disappearance have been and are unknown. The beneficiary also has disappeared and while it is suspected that she has possession of the policies, such fact cannot be established. If the insured died before the date of bankruptcy, his beneficiary is entitled to payment of the amounts of the policies. If the policies were assigned by the insured prior to bankruptcy for value and are in the possession of the assignee, the insurers are reasonably certain of being subjected to litigation, if not to damages.

 It is not sufficient in the instant case that the plaintiff makes a showing that it is impossible to surrender the policies. The general proposition is well recognized that equity will not require performance of an impossible act, but it does not follow that one who is relieved therefrom can claim all the advantages that go with the performance. He may merely escape burdens or penalties. And when, as in the instant case, a party seeks to be relieved from the performance of a condition precedent to obtaining relief on the ground that it is impossible to perform such condition, such party must also show that the granting of the relief will not jeopardize the legitimate interests of the person entitled to performance of the condition.

Ordinarily in a suit by a creditor of the insured or by the trustee in bankruptcy to recover the cash value of an insurance policy the beneficiary has no vested interest which must be considered. But in the instant case the trial court could not ignore the fact that the beneficiary does have a vested interest in the policy if the insured was not living at the date of bankruptcy. On that date the policies were all in full force and effect. There had been no default in payment of premiums and the insured had not exercised any of his options under the contract relative to receipt of policy values.

On appeal our inquiry is whether the District Court, as an equity court, in view of the peculiar facts of the case, was justified in finding a want of equity in plaintiff's demand. In our opinion the District Court properly concluded that the equities of the plaintiff did not justify disregarding the contractual interests of the defendant companies and we hold that the District Court did not err in its decree of dismissal for want of equity.

The decree of the District Court is affirmed.